TIP McINTOSH v. THE STATE.

No. 6438.  Decided February 1, 1922.

Rehearing Denied April 5, 1922.

1.—Rape—Verdict—Punishment—Rule Stated.

The fact that the jury do not render a verdict commensurate with the gravity of the crime, if proven, is no serious ground of complaint upon which might be based a request for a new trial. Bragg v. State, 73 Texas Crim. Rep., 340, and other cases; and where the testimony was sufficient to support the conviction, there was no reversible error.

2.—Same—Charge of Court—Evidence Other Than as to Prosecutrix—Other Offenses.

Where, upon trial of statutory rape, testimony of other like offenses was introduced in evidence, and the same was duly limited, defendant's complaint that the same was insufficient in not affirmatively instructing the jury on said testimony, was untenable. Besides, no requested instructions was presented.

3.—Same—Evidence—Impeaching Witness—Harmless Error.

Where, upon trial of statutory rape, defendant complained of the refusal of the trial court to permit him to ask a certain State's witness if a complaint had not been filed against her in the justice court charging her with being a vagrant, to-wit, a common prostitute, and that she was convicted thereon, the question should have been allowed, but in the instant case, under the facts, there was no reversible error.

4.—Same—Rehearing—Impeaching Witness—Harmless Error.

While it was error not to permit the defendant to show that a state's witness had been convicted of being a common prostitute, yet under all the facts, such ruling of the court was harmless error, and there was no reversible error. Overruling Neyland v. State, 79 Texas Crim. Rep., 652; Ellis v. State, 56 Texas Crim. Rep., 14.

Appeal from the District Court of Wood.  Tried below before the Honorable J. R. Warren.

Appeal from a conviction of statutory rape; penalty, six-years imprisonent in the penitentiary.

The opinion states the case.

A. J. Britton and Simpson, Lassiter & Simpson, for appellant.— On question of impeaching witness: Campbell v. State, 230 S. W. Rep., 695; Mobley v. State, 232 id., 531.

R. G. Storey, Assistant Attorney General, for the State.—Cited Fluewellen v. State, 204 S. W. Rep., 657; Wood v. State, 206 id., 349, and cases cited in opinion.

LATTIMORE, Judge.—Appellant was convicted in the District Court of Wood County of the offense of statutory rape, and his punishment fixed at six years in the penitentiary.

This is the second appeal of this case: See 85 Texas Crim. Rep. 417.

The first contention of appellant is that the evidence does not support the judgment, the argument being that if the charge against him be true and proven, the verdict is so low as to be an outrage upon law and society; and that if the charge against him be not true and not proven, any punishment is an outrage upon him. The amount of punishment is to be fixed by the jury under our procedure, and it has never been held, nor do we think it ever will be held, that the fact that the jury do not render a verdict commensurate with the gravity of the crime, if proven, would be serious ground of complaint upon which might be based a request for a new trial. Campbell v. State, 65 Texas Crim. Rep., 418; 144 S. W. Rep., 966; High v. State, 54 Texas Crim. Rep. 333; Wysong v. State, 66 Texas Crim. Rep., 201; 146 S. W. Rep. 941; Bragg v. State, 73 Texas Crim. Rep., 340. We are not led to believe from our examination of the instant record that the verdict is without support in the testimony. The prosecutrix and her sister testified to ample facts to justify the conviction, and were corroborated by the testimony of several apparently reputable physicians who examined the injured girl.

Appellant makes complaint that the charge of the lower court was erroneous in that it did not affirmatively instruct the jury that they could not convict him on this trial upon evidence showing him guilty of rape upon persons other than the prosecutrix herein. It is contended that a sufficient exception was taken to the charge to call the attention of the trial court to what is here claimed as the lack of sufficiency of the charge on this point. The record discloses that in proving its case in chief the State only introduced evidence showing that appellant had carnal knowledge of Truman Wolff, his step-daughter, a girl under the age of fifteen years at the time. During the introduction of appellant's evidence and in the State's rebuttal it was brought out that he had carnally known two other girls under the age of consent. It was also in testimony that the appellant was under indictments for rape upon each of said other girls. In the charge of the court below the following appears:

"Furthermore, I have admitted testimony showing that the defendant is charged by indictment with the offense of rape upon Mattie Wolff and Maurine McIntosh, and testimony upon such charges. This testimony upon such charges is admitted (in connection with all other testimony) to aid you, if it does, and to be given such weight, if any, only as you may deem it entitled to in determining whether the defendant is guilty of the rape of Truman Wolff as charged in the indictment in this case, and you must not consider it for any other purpose. The indictments in said cases and in this case can

not be considered by you as evidence showing or tending to show the defendant guilty of the charge of rape of Truman Wolff.''

It is contended by appellant that this did not sufficiently inform the jury that they could not convict herein for any rape upon Mattie Wolff and Maurine McIntosh. The opening paragraph of the charge contained the following statement: ''Gentlemen of the Jury: The defendant stands charged by indictment with the offense of rape alleged to have been committed upon Truman Wolff, . . . and it is upon this charge that he is being tried.'' In paragraph five the jury are told: ''Unless you find beyond a reasonable doubt that the defendant had carnal knowledge of the said Truman Wolff, . . . you will find the defendant not guilty.'' In the seventh paragraph of the court's charge, which is quoted above, it seems to us that the jury were plainly told that evidence had been admitted showing that appellant was indicted for rape upon Mattie Wolff and Maurine McIntosh, and also testimony admitted affecting the truth of such charges; and that the testimony affecting the truth of such charges was admitted to aid the jury in determining whether the appellant was guilty of the rape of Truman Wolff, and must not be considered by them for any other purpose. The fact that appellant was indicted in said cases was not to be considered by the jury as evidence tending to show appellant guilty of the rape of Truman Wolff, and the jury were so told in said paragraph. We do not see just how the trial court could have made the matter any clearer. It was not necessary to give any different charge than the one given, but if it had been, we believe that under the present practice where an issue is given in the charge but not in the form in which the accused desires the submission of same, he may not content himself with taking an exception to the form of that portion of the court's charge, but must also present to the court a special charge presenting the issue in what he conceives to be a better or correct form. No special charges were asked by appellant in this case.

Complaint is also made of the refusal of the trial court to permit appellant to ask Igotha Winterbower, a witness for the State, if a complaint had not been filed against her in the justice court of precinct No. 1 of Smith County, Texas, charging her with being a vagrant, to-wit: a common prostitute. It is stated in the bill of exceptions that the State objected to this and the court sustained such objection, to which action of the court the appellant excepted. No ground of the State's objection is stated, and in such case, upon the broad ground that we are to presume everything in favor of the legality of the action of the trial courts, we must conclude that the State made all objections which might be made to the question asked. In the form this question was put it would seem to be open to the objection that it called for the contents of the complaint, which was a written document on file. We are aware that when objections are made to questions of this character, if same are asked for the pur-

pose of affecting the credibility of a witness, the rules are broadened almost to the point of waiving the rule pertaining to the best evidence obtainable. This witness was also asked if it was not true that on a certain date she pleaded guilty in the justice court of precinct No. 1 of Smith County, Texas, to the charge of being a vagrant, to-wit: a common prostitute, and it is shown that the State's objection to this question was also sustained and witness not permitted to answer, and that if she had been allowed to answer same, she would have done so in the affirmative. This seems to sufficiently present the proposition that appellant was denied this testmiony. In the cases of Neyland v. State, 79 Texas Crim. Rep., 652, and Ellis v. State, 56 Texas Crim. Rep., 14, it was held by this court that a witness could not be impeached by proof of the fact that she had been charged with or convicted of being a vagrant, to-wit: a common prostitute. We do not think this a correct rule, and in so far as those case announce one to the contrary, they are overruled. We are of opinion that appellant should have been permitted to ask the witness Winterbower if she had not been legally charged with being a common prostitute, and if she had not pleaded guilty thereto. Campbell v. State, 89 Texas Crim. Rep., 243; Morley v. State, 232 S. W. Rep., 531; Woods v. State, 206 S. W. Rep. 349. We are now confronted by the question as to whether or not this error, and the refusal of the trial court to admit the testimony, are sufficient to demand a reversal of this case. We do not think so. In Woods v. State, supra, similar evidence was held admissible but its rejection not of sufficient importance to call for a reversal. The witness in the instant case thus attacked by appellant, was not an eyewitness, nor was she introduced by the State in making out its case in chief, nor until the appellant had attempted by various witnesses to show the animus and ill-will of such witness toward him, and that one of the little girls upon whom appellant was under indictment for an assault, had stated that said witness had told her and the other girls to tell that appellant had made such assault. A careful examination of the record in this case makes it clear that the State's case in nowise rested upon any fact testified to by Igotha Winterbower nor was the case for the defense dependent in any wise thereon. This woman was formerly a daughter-in-law of appellant and was inmate of his home at the time he was arrested on the charges herein referred to. No witness testified to the fact that appellant's arrest was caused by information given by her. It is not disputed that growing out of what she thought was appellant's ill-treatment of his son, the then husband of said woman, she entertained and expressed toward him ill-will. Truman Wolff, prosecutrix herein and a step-daughter of appellant, a girl fourteen years of age at the time of the instant trial, was cross-examined by appellant in an effort to show that the Winterbower woman in some way induced her to charge appellant with this crime, but the witness denied the imputation. Mattie Wolff, sister of Truman, a girl sixteen

years of age at the time of this trial, testified that she was in the family residence at the time of the alleged assault on Truman, and that she saw appellant go to the out-house in which the alleged assault took place, and that when presently Truman came to the house she was crying and told witness what appellant had done to her, and the two girls went back down to said out-house where witness saw blood on the floor. Three reputable physicians testified to an examination of Truman Wolff, and that they discovered the child's private parts in such condition as to indicate that some one had assaulted or attempted to assault her recently before such examination. Mattie Wolff was also cross-examined relative to whether or not the Winterbower woman had in any way influenced her to tell what she had stated, and vigorously denied such fact. The only witness testifying for appellant whose evidence tended to indicate that Igotha Winterbower had even suggested to Truman and Mattie Wolff that they tell of the assaults of appellant, was Maurine McIntosh, appellant's daughter. This child, ten years old at the time of the instant trial, was shown to have made numerous contradictory statements for and against appellant, charging him with having assaulted her, and later having made affidavits that such charge was false, and still later having made other affidavits reiterating the charge; charging Frank Wolff with having assaulted her, and on other occasions denying that Frank Wolff had assaulted her, and charging Roy McIntosh with having made such assault, and on other occasions denying that he had made same. It was shown that after this young girl testified before the grand jury and appellant was indicted for the assault on Truman Wolff, she was present at court on two occasions and was taken apart privately by counsel for the appellant, under permission of the court, and thoroughly tested by said counsel, the things then said and done being taken down by the court stenographer and here introduced in evidence. No one was present at said time except said attorneys, the child and said stenographer. Throughout each of these interviews Maurine insisted that appellant had assaulted her, and she was not used as a witness upon either of said trials.

Reverting to our position that no error was committed by the trial court in the rejection of the testimony showing that Igotha Winterbower had pleaded guilty to being a vagrant, to-wit: a common prostitute, we further observe that the only legal effect of such testimony would be as tending to reflect upon the credibility of said witness. The record shows that after said witness testified for the State, appellant placed upon the stand the sheriff of the county who testified, without cross-examination or objection, that the reputation of said Igotha Winterbower for truth and veracity was bad. Mr. Low, another witness for the appellant, also testified that the reputation of said witness for truth and veracity was bad. An examination of the statement of facts discloses that the State offered no controverting testimony to the above. As stated, the only effect of proof of the

fact that the witness was a common prostitute would be as tending to show her unworthy of credit as a witness. Any view of appellant that this evidence would be admissible as tending to show that Igotha Winterbower in fact instigated the statements of Mattie and Truman Wolff implicating appellant in this crime, would be unwarranted. It being shown without contradiction that Igotha Winterbower's reputation for truth and veracity was bad, the rejection of evidence which would amount to but a circumstance affecting her credibility as a witness, would seem harmless and not of sufficient weight to justify us in reversing this case. Many cases beside those cited below can be found in which this court has declined to reverse because of errors which seem harmless. In Wright v. State, 36 Texas Crim. Rep. 427, we held that the rejection of evidence tending to show the animus of a witness, was not reversible error when there was no other evidence before the jury supporting such fact. The same proposition will be found in Lamb v. State, 56 S. W. Rep. 51; Edwards v. State, 61 Texas Crim. Rep. 307, 135 S. W. Rep. 540; Foster v. State, 68 Texas Crim. Rep., 38, 150 S. W. Rep., 936; Cooper v. State, 72 Texas Crim. Rep. 266, 162 S. W. Rep. 364; Willis v. State, 167 S. W. Rep. 352. Nor do we think the testimony of the witness Winterbower of such materiality as that we would be called upon to reverse this case because of the refusal of the trial court to permit said evidence. At the time of the trial she was shown to be living in Dallas engaged in the business of a typist. She had been separated from her husband, the son of appellant, for about two years. For three years Mattie and Truman Wolff, upon whose testimony mainly rested the conviction of the accused, had lived with an uncle, and as far as the record discloses had not been subjected to any influence or opportunity for influence on the part of said witness. There would appear to be nothing material to the case in the testimony of said Winterbower except insofar as same related to the question of her influencing said girls to state falsely that appellant made the assaults in question. The probable weight of the rejected testimony as affecting the question of the influence exerted by said witness upon said girls to induce them to testify falsely, would seem to us so slight and remote as to in no way justify reversing the case.

Finding no error in the record, the judgment of the trial court will be affirmed.

*Affirmed.*

## ON REHEARING.

### April 5, 1922.

HAWKINS, JUDGE.—Appellant urges that we were wrong in our original opinion in concluding that the failure of the trial court to permit him to show that Igotha Winterbower had been convicted of being a common prostitute was not such an error as called for a reversal of the judgment. There is no doubt that such ruling of the

trial court was erroneous, but under all the facts we cannot bring ourselves to agree with appellant's contention that depriving him of such evidence was harmful to the extent urged. We undertook in our former opinion to give our reasons for this view, relating at some length the evidence to show why, to our minds, the proposed testimony had such remote bearing upon the issues as justified the conclusion reached. We are still of the belief that such conclusion was warranted, and think it unnecessary to write further.

The motion for rehearing is overruled.

*Overruled.*